**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| **ELIZABETH DENSON and KRISTOPHER ANTLE,** Individually and on behalf of all others similarly situated <br><br> *Plaintiffs*, <br><br> v. <br><br> **ELEPHANT INSURANCE SERVICES, LLC and ELEPHANT INSURANCE COMPANY** <br><br> *Defendants.* | **Civil Action No.  3:22-cv-22** <br><br> **JURY TRIAL DEMANDED** <br><br> **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** <br><br> **CLASS ACTION PURSUANT TO FED. R. CIV. PRO 23** |

## COMPLAINT

Plaintiffs Elizabeth Denson ("Denson") and Kristopher Antle ("Antle") bring this action individually and on behalf of all current and former hourly sales agents (hereinafter "Plaintiffs and the Putative Class Members") who worked for Elephant Insurance Company and/or Elephant Insurance Services, LLC  (hereinafter "Defendant" or "Elephant"), at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, double and/or triple damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b) and Va. Code Ann. §§ 40.1-29 (referred to herein as the Virginia Wage Payment Act, or VWPA), and 40.1-29.2 (the Virginia Overtime Wage Act, or VOWA).

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the additional Virginia law claims are asserted as class actions under Federal Rule of Civil Procedure 23. The following allegations are based on personal

1

knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.  OVERVIEW

1. This is a "hybrid" collective/class action to recover overtime wages, regular wages, liquidated damages, and other applicable damages brought pursuant to federal and state wage laws. The collective action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and class actions under FED. R. CIV. PROC. 23 are brought pursuant to the Virginia Wage Payment Act ("VWPA"), Code of Va. § 40.1-29, and Virginia Overtime Wage Act ("VOWA"), Code of Va. § 40.1-29.2, to recover unpaid overtime wages, regular wages, liquidated and/or treble damages, and other applicable damages.

2. Plaintiffs and the Putative Class Members are those similarly situated persons who have worked for Elephant as sales agents at its Richmond, Virginia call center, at any time during the three years preceding the filing of this complaint and have not been paid for all hours worked nor been paid the correct amount of overtime in violation of state and federal law.

3. Specifically, Elephant has enforced a uniform policy wherein it improperly required its non-exempt sales agent call-center employees—Plaintiffs and the Putative Class Members—to perform work off-the-clock and without pay in violation of state and federal law.

4. Elephant's illegal policy has caused Plaintiffs and the Putative Class Members to have hours worked that were not compensated.

5. Although Plaintiffs and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiffs and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.      Elephant knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

7.      Plaintiffs and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or applicable state laws.

8.      Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time, overtime, liquidated damages, and other damages owed under the state laws of Virginia as class actions pursuant to Federal Rule of Civil Procedure 23.

9.      Plaintiffs pray that all similarly situated workers be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.      Plaintiffs also pray that the Rule 23 classes are certified as defined herein, and the Plaintiffs designated herein be named as Class Representatives.

## II.      THE PARTIES

11.      Plaintiff Denson is a Virginia resident and was employed by Elephant in Richmond, Virginia as a sales agent at it call center from July of 2018 through August of 2021. Plaintiff Denson was an hourly employee but did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked more than forty (40) hours per workweek.[1]

12.      Plaintiff Antle is a Virginia resident and was employed by Elephant in Richmond,

---

[1]  The written consent of Elizabeth Denson is attached hereto as Exhibit 1.

Virginia as a sales agent at it call center from July of 2018 through August of 2020. Plaintiff Antle was an hourly employee but did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked more than forty (40) hours per workweek.[2]

13.     The FLSA Collective Members are those current and former hourly sales agent call-center employees who were employed by Elephant at any time within the three years preceding the filing of this complaint, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

14.     The Virginia Wage Class Members are those current and former hourly sales agent call-center employees who were employed by Elephant in Virginia, at any time from July 1, 2020, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs Denson and Antle worked and were paid. Both Denson and Antle are Class Representatives for the Virginia Wage Class.

15.     The Virginia Overtime Class Members are those current and former hourly sales agent call-center employees who were employed by Elephant in Virginia, at any time from July 1, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Denson worked and was paid. Because Antle did not work for Elephant on or after July 1, 2021, only Denson is the proposed Class Representative for the Virginia Overtime Class.

16.     Elephant, is a domestic for-profit corporation, organized under the laws of the State of Delaware with a principal office and corporate headquarters located at 9950 Mayland Drive, Suite 400 in Henrico County Virginia.

---

[2]  The written consent of Kristopher Antle is attached hereto as Exhibit 2.

17.     Elephant Insurance Company is a Virginia Stock Corporation with a principal office and corporate headquarters located at 9950 Mayland Drive, Suite 400 in Henrico County, VA.

18.     On information and belief, the Defendants are related entities in the insurance industry.  According to filings with the Virginia State Corporation Commission, both Defendants list their principal office as the same location and share the same registered agent.  Plaintiff is currently unable to determine the precise corporate structure and relationship between Defendants.  Defendants are an "employer" as defined by the FLSA.

### III.     JURISDICTION & VENUE

19.     This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

20.     This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

21.     This Court has personal jurisdiction over Elephant because of Elephant's conduct within this District and Division.

22.     Venue is proper in the Eastern District of Virginia because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

23.     Specifically, Elephant maintains a significant working presence within this District and Division and Plaintiffs and those similarly situated worked for Elephant within this District and Division.

24.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

### IV.     ADDITIONAL FACTS

25.     According to its website, Elephant is a "consumer-centric direct insurer"

headquartered in Richmond Virginia.[3]  Elephant's main insurance products are automobile, homeowners, and renters' insurance.  Elephant also offers condominium, motorcycle, life, and umbrella policies as "additional products."

26.     Elephant operates a large call center in Henrico, Virginia where Plaintiffs Denson and Antle and other sales agents worked prior to the Covid-19 pandemic when many of them began working from home.

27.     To provide its services, Elephant employs numerous hourly sales agent call-center employees – Plaintiffs and the Putative Class Members – who assist Elephant's customers in applying and securing insurance coverage from Elephant and/or other insurers for whom Elephant may offer coverage from time to time.

28.     Plaintiffs' and the Putative Class Members' job duties generally consisted of answering phone calls and inquiries made by Elephant's customers, troubleshooting on behalf of customers, and generally assisting customers as they inquired about, secured, or attempted to secure insurance coverage.

29.     Plaintiffs and the Putative Class Members are non-exempt sales agent call-center employees that were (and continue to be) paid by the hour.

30.     Plaintiffs and the Putative Class Members typically worked (and continue to work) approximately forty (40) "on-the-clock" hours per week.

31.     In addition to their forty (40) "on-the-clock" hours, Plaintiffs and the Putative Class Members worked (and continue to work) an additional one (1) hour or more "off-the-clock" per week for which they were not compensated.

32.     Elephant employed (and continues to employ) other individuals who perform(ed)

---

[3] *See* https://www.elephant.com/about (last visited 1.12.22).

the same or similar job duties under the same pay provisions as Plaintiffs.

33.     Moreover, Plaintiffs and the Putative Class Members are similarly situated with respect to their job duties, their pay structure, and, as set forth below, the policies of Elephant resulting in the complained of FLSA and Virginia law violations alleged herein.

34.     Elephant was (and continues to be) aware of its obligation to pay Plaintiffs and the Putative Class Members for all hours worked and pay the proper amount of overtime for all hours worked in excess of forty (40) each week but has failed to do so.

35.     Because Elephant did not pay Plaintiffs and the Putative Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, Elephant's pay policies and practices violate the FLSA and the Virginia laws alleged herein.

**Unpaid Start-Up Time**

36.     Plaintiffs and the Putative Class Members were not, and are not, compensated for all the hours they worked for Elephant as a result of Elephant's corporate policy and practice of requiring all sales agent call-center employees to be ready to take their first phone call the moment their official shift starts.

37.     Specifically, Plaintiffs and the Putative Class Members have been required to start and log into their computer, open and log in to multiple different Elephant computer programs and interfaces and ensure that each is running correctly in order to take their first phone call, which comes in as soon as their official shift starts.

38.     This process typically takes approximately fifteen (15) minutes but can take up to thirty (30) minutes or longer depending on whether all programs open and run properly.

39.     If Plaintiffs and the Putative Class Members are not ready and on the phone at shift start, they can be subject to discipline.

40.    If Plaintiffs and the Putative Class Members clock in prior to their shift start time, they are also subject to discipline.

41.    Therefore, the only way to be ready on time, and avoid discipline, is to prepare the computer "off-the-clock" and without pay.

42.    Although this start-up time is necessary and integral to their job duties, Plaintiffs and the Putative Class Members have not been compensated for this time.

43.    Elephant has required Plaintiffs and the Putative Class Members to be ready to accept their first customer call or interface the moment the employee's official shift starts.

44.    Elephant also required that Plaintiffs and the Putative Class Members log on and have all the requisite computer programs running before their first phone call or interface at the start of their official shift.

45.    As such, Elephant required (and continues to require) that Plaintiffs and the Putative Class Members perform these start-up tasks "off-the-clock" before their official shift begins.

46.    Elephant has the ability to accurately track all hours worked by its sales agents but has elected not to, presumably because it inures to Elephant's benefit.  In fact, Elephant tracks sales agent time on a near granular level and goes so far as to track time spent using the restroom as one of the many metrics incorporated into sales agent bonus eligibility.

### V.    CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

### A.    FLSA COVERAGE

47.    All previous paragraphs are incorporated as though fully set forth herein.

48.    The FLSA Collective is defined as:

**All hourly sales agent call-center employees who were employed by Elephant at any time within the three years preceding the filing of Plaintiffs' Complaint through the final disposition of this matter who worked more than forty hours in any week during that period and were not paid all overtime owed. ("FLSA Collective" or "FLSA Collective Members").**

49.     During the relevant period, Plaintiffs and the FLSA Collective Members have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

50.     During the relevant period, Elephant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

51.     At all times hereinafter mentioned, Elephant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

52.     During the respective periods of Plaintiffs' and the FLSA Collective Members' employment by Elephant, these individuals have provided services for Elephant that involved interstate commerce for purposes of the FLSA.

53.     In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

9

54.     Specifically, Plaintiffs and the FLSA Collective Members are non-exempt hourly sales agent call-center employees of Elephant who assisted Elephant customers. 29 U.S.C. § 203(j).

55.     At all relevant times, Plaintiffs and the FLSA Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

56.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Elephant but is believed to be approaching or upwards of six hundred (600).

**B.      FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

57.     Elephant has violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

58.     Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Elephant's acts or omissions as described herein; though Elephant is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

59.     Moreover, Elephant knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees for all hours worked and the proper amount of overtime compensation for all hours worked over forty (40)

10

each week. 29 U.S.C. § 255(a).

60.     Elephant knew or should have known its pay practices were in violation of the FLSA.

61.     Elephant is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

62.     The decision and practice by Elephant to not pay for all hours worked and the proper amount of overtime for all hours worked over forty (40) each week was neither reasonable nor in good faith.

63.     Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, and attorneys' fees and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

64.     All previous paragraphs are incorporated as though fully set forth herein.

65.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of Elephant employees who have been similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

66.     Other similarly situated employees of Elephant have been victimized by Elephant's patterns, practices, and policies, which are in willful violation of the FLSA.

67.     Elephant's failure to pay Plaintiffs and the FLSA Collective Members for all hours worked and overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Elephant, and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

68.     Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

69.     The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

70.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be paid for all hours worked and at the proper overtime rate for all hours worked in excess of forty (40) hours per workweek.

71.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

72.     Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Elephant will retain the proceeds of its violations.

73.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

74.     Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in herein and notice should be promptly sent.

## **COUNT TWO**
### **(Class Action Alleging Violations of VWPA, Va. Code § 40.1-29)**

**A.      VA. CODE § 40.1-29 COVERAGE**

75.     The **Virginia Wage Class** is defined as:

> **All hourly sales agent call-center employees who were employed by Elephant in Virginia, at any time from July 1, 2020, through the final disposition of this matter. ("Virginia Wage Class" or "Virginia Wage Class Members").**

76.     At all relevant times, Elephant has been an "employer" within the meaning contemplated by VWPA, VA. CODE § 40.1-29.

77.     At all relevant times, Plaintiffs, and those similarly situated have been "employees" within the meaning contemplated by VWPA, VA. CODE § 40.1-29.

78.     Plaintiffs Denson, Antle and the Virginia Wage Class Members were or have been employed by Elephant since July 1, 2020 and have been covered employees entitled to the protections of VWPA, Virginia Code § 40.1-29.

**B.      FAILURE TO PAY WAGES PURSUANT TO VWPA (VA. CODE § 40.1-29)**

79.     The VWPA was amended to provide employees with a private right of action for wage theft effective July 1, 2020.

80.     The VWPA requires that an employer – like Elephant – establish regular pay periods and pay all wages due on time. *See* Code of Va. § 40.1-29(A).

81.     The VWPA prohibits employers from withholding any part of the wages of its employees. *See* Code of Va. § 40.1-29(B).

82.     Elephant withheld and failed to pay Plaintiffs and the Virginia Wage Class Members all of their owed wages on their regularly scheduled paydays because of its policies requiring them to work off-the-clock.

83.     Plaintiffs and the Virginia Wage Class Members seek to recover their unpaid wages owed to them as a result of Elephant's company-wide policy.

84.     Plaintiffs and the Virginia Wage Class Members have suffered damages and continue to suffer damages as a result of Elephant's acts or omissions as described herein; though Elephant is in possession and control of necessary documents and information from which Plaintiffs and the Virginia Wage Class Members would be able to precisely calculate

13

damages.

85.     The Defendant has knowingly violated Va. Code § 40.1-29 by failing to pay Plaintiffs, and those similarly situated, the wages for required working time occurring off-the-clock.

86.     Defendant's policies and procedures requiring such off-the-clock work has deprived Plaintiffs, and those similarly situated, of their earned wages.

87.     Plaintiffs, on behalf of themselves and the Virginia Wage Class Members, seek recovery of the unpaid wages earned and due, double or treble damages, attorneys' fees, and costs. *See* Code of Va. § 40.1-29(J)-(K)

88.     Plaintiffs bring this action for all violations alleged herein commencing July 1, 2020, and ongoing.

89.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Elephant.

C.     **VIRGINIA WAGE CLASS ALLEGATIONS**

90.     Plaintiffs Denson and Antle bring their Virginia claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Elephant to work in Virginia since July 1, 2020.

91.     Class action treatment of Plaintiffs' claims are appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

92.     The number of Virginia Wage Class Members is so numerous (believed to be approximately 600) that joinder of all class members is impracticable.

93.     The claims alleged by Plaintiffs share common issues of law and fact with the claims of the Virginia Wage Class Members.

14

94.     Plaintiffs Denson and Antle are members of the Virginia Wage Class, their claims are typical of the claims of other class members, and they have no interests that are antagonistic to or in conflict with the interests of other class members.

95.     Plaintiffs and their counsel will fairly and adequately represent the class members and their interests.

96.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

97.     Accordingly, the Virginia Wage Class should be certified.

## **COUNT THREE**
### **(Class Action Alleging Violations of VOWA, Va. Code § 40.1-29.2)**

**A.     VA. CODE § 40.1-29.2 COVERAGE**

98.     The Virginia Overtime Class is defined as:

> **All hourly sales agent call-center employees who were employed by Elephant in Virginia, at any time since July 1, 2021, through the final disposition of this matter who worked more than forty hours in any week during that period and were not paid all overtime owed. ("Virginia Overtime Class" or "Virginia Overtime Class Members").**

99.     Since July 1, 2021, Elephant has been an "employer" within the meaning of VOWA, VA. CODE § 40.1-29.2(A).

100.    Since July 1, 2021, Plaintiff Denson, and those similarly situated, have met the definition of "employee" within the meaning of VOWA, VA. CODE § 40.1-29.2(A).

101.    Plaintiff Denson, and the Virginia Overtime Class Members, were or have been employed by Elephant at time since July 1, 2021, and have been covered employees entitled to

the protections of VOWA.

102.    Elephant is not exempt from paying Plaintiff Denson, and the Virginia Overtime

Class Members, overtime premium in accordance with Virginia Code § 40.1-29.2.

**B.      FAILURE TO PAY OVERTIME IN ACCORDANCE WITH VOWA (VA. CODE § 40.1-29.2)**

103.    VOWA went into effect on July 1, 2021, and for the first time provides employees

in Virginia with a state law right of action to recover overtime premiums earned for all work

performed in excess of 40 hours per week.

104.    VOWA requires that an employer – like Elephant – pay its hourly employees an

overtime premium of not less than one and one-half times the employee's regular rate of pay. *See*

Code of Va. § 40.1-29.2(B).

105.    Plaintiffs and the FLSA Collective Members are non-exempt hourly sales agent

call-center employees of Elephant who are entitled to the protections of VOWA.

106.    Elephant has violated VOWA by failing to pay Plaintiff Denson and other

Virginia Overtime Class Members for all of the time spent working for Elephant "off-the-clock,"

resulting in its failure to pay the required overtime premium for time spent working in excess of

40 hours per week.

107.    Elephant is not entitled to any of the exemptions under VOWA to avoid paying

Denson or the Virginia Overtime Class Members the required overtime premium for time spent

working in excess of 40 hours per week.

108.    Plaintiff Denson and the Virginia Overtime Class Members seek to recover their

unpaid overtime owed to them as a result of Elephant's company-wide policy.

109.    Plaintiff Denson and the Virginia Overtime Class Members have suffered

damages and continue to suffer damages as a result of Elephant's acts or omissions as described

16

herein; though Elephant is in possession and control of necessary documents and information from which Plaintiffs and the Virginia Overtime Class Members would be able to precisely calculate damages.

110.    The Defendant has knowingly violated Va. Code § 40.1-29.2 by failing to pay Plaintiffs, and those similarly situated, overtime premiums for required working time occurring off-the-clock.

111.    Defendant's policies and procedures requiring such off-the-clock work has deprived Plaintiffs, and those similarly situated, of their earned overtime premiums.

112.    Plaintiff Denson, on behalf of herself and the Virginia Overtime Class Members, seek recovery of the unpaid overtime premiums earned and due, double or treble damages, attorneys' fees, and costs. *See* Code of Va. § 40.1-29.2(F) (incorporating the enforcement and damages provisions of the VWPA at Code of Virginia § 40.1-29(J)).

113.    Plaintiffs bring this action for all violations alleged herein commencing July 1, 2021, and ongoing.

114.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Elephant.

### C.    VIRGINIA OVERTIME CLASS ALLEGATIONS

115.    Plaintiff Denson brings her VOWA claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Elephant to work in Virginia at any time since July 1, 2021.

116.    Class action treatment of Denson's VOWA claims are appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

117.    The number of Virginia Overtime Class Members is so numerous (believed to be

approximately 600) that joinder of all class members is impracticable.

118.    The VOWA claims alleged by Denson share common issues of law and fact with the claims of the Virginia Overtime Class Members.

119.    Denson is a member of the Virginia Overtime Class, her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

120.    Denson and her counsel will fairly and adequately represent the Virginia Overtime Class Members and their interests.

121.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

122.    Accordingly, the Virginia Overtime Class should be certified.

## VI.    RELIEF SOUGHT

123.    Plaintiffs respectfully pray for judgment against Elephant as follows:

a.    For an Order certifying the FLSA Collective as defined herein and requiring Elephant to provide the names, addresses, e-mail addresses, and telephone numbers of all putative collective action members;

b.    For an Order certifying the Virginia Wage Class as defined herein and designating Plaintiffs Denson and Antle as the Class Representatives of the Virginia Wage Class;

c.    For an Order certifying the Virginia Overtime Class as defined herein and designating Plaintiff Denson as the Class Representative of the Virginia Overtime Class;

d.    For an Order approving the form and content of a notice to be sent to all

putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    e.  For an Order pursuant to Section 16(b) of the FLSA finding Elephant liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

    f.  For an Order pursuant to VWPA, Code of Virginia § 40.1-29, awarding Plaintiffs and the Virginia Wage Class Members unpaid wages, double damages or triple damages upon a finding that Elephant's violations were "knowing," prejudgment interest, costs, attorneys' fees, and any other damages allowed by law;

    g.  For an Order pursuant to VOWA, Code of Virginia § 40.1-29.2, awarding Plaintiffs and the Virginia Wage Class Members unpaid wages, double damages or triple damages upon a finding that Elephant's violations were "knowing," prejudgment interest, costs, attorneys' fees, and any other damages allowed by law;

    h.  For an Order awarding costs and expenses of this action;

    i.  For an Order awarding attorneys' fees pursuant to the FLSA and/or Virginia law;

    j.  For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

    k.  For an Order awarding Plaintiffs service awards as permitted by law;

    l.  For an Order compelling the accounting of the books and records of Elephant, at Elephant's own expense; and

    m.  For an Order granting such other and further relief as may be necessary

and appropriate.

Date:   January 13, 2022                    Respectfully submitted,


By:   /s/ *Zev H. Antell*
      Harris D. Butler, III (VSB No. 6483)
      Craig J. Curwood (VSB No. 43975)
      Zev H. Antell (VSB No. 74634)
      **BUTLER CURWOOD, PLC**
      140 Virginia Street, Suite 302
      Richmond, Virginia 23219
      Telephone: (804) 648-4848
      Facsimile: (804) 237-0413
      Email: harris@butlercurwood.com
             craig@butlercurwood.com
             zev@butlercurwood.com


      ***Attorneys for Representative Plaintiffs and
      Putative Collective/Class Members***